IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00539-MEH

KEITH V. GOSSELIN,

    Plaintiff,

v.

SGT. KAUFMAN,
OFFICER GONZALEZ, and
SHARON PHILIPS,

    Defendants.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is Defendants' Motion to Dismiss [filed June 29, 2015; docket #46]. The Motion is briefed and oral argument would not materially assist the Court in its adjudication. For the reasons that follow, the Court **grants** the Motion.[1]

## BACKGROUND

Plaintiff, a prisoner proceeding *pro se*, initiated this action on March 16, 2015, filing a Complaint that named six Defendants for their alleged treatment of him while he was incarcerated at San Carlos Correctional Facility. Docket #1. Based on U.S. Magistrate Judge Gordon P. Gallagher's Orders granting Plaintiff leave to proceed *in forma pauperis* and directing Plaintiff to amend his Complaint to clarify his claims [*see* dockets #8-9], Plaintiff filed the operative Amended

---

[1] Pursuant to 28 U.S.C. § 636(c) and the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges, the parties consented to the jurisdiction of this Court to conduct all proceedings in this civil action. Dockets ##38, 41.

Complaint on April 14, 2015 [*see* docket #11]. The Hon. Lewis T. Babcock then reviewed the Amended Complaint and dismissed three of the six Defendants, calling the claims against them "legally frivolous." Docket #11 at 5-6. Remaining in the suit is Plaintiff's 28 U.S.C. § 1983 claims for alleged violations of his Eighth Amendment rights by three Defendants: Sergeant Kaufman, Officer Gonzalez, and Sharon Philips. *Id*. at 7.

"The Eighth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishments on those convicted of crimes." *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). The Eighth Amendment is the main source of prisoners' substantive rights and, regarding convicted prisoners, the legal standards under the Eighth and Fourteenth Amendments are generally congruous. *See Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (Where constitutional protection is afforded under specific constitutional provisions, here the Eighth Amendment, alleged violations of the protection should be analyzed under those provisions and not under the more generalized provisions fo the Fourteenth Amendment). Thus, the Court reviews Plaintiff's claim under the Eighth Amendment as applicable to the states through the Fourteenth Amendment. *Riddle*, 83 F.3d at 1202.

**I.    Facts**

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiff against the moving Defendants in the operative Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff, currently incarcerated at Centennial Correctional Facility ("CCF") in the Colorado Department of Corrections ("CDOC"), asserts claims for his alleged treatment as a prisoner housed

at San Carlos Correctional Facility ("SCCF"), where Defendants worked at the time of the events. Docket #11 at 1.  Plaintiff alleges that Defendants Kaufman and Gonzalez violated the Eighth Amendment when Kaufman allegedly used excessive force on Plaintiff when Kaufman came to his cell at SCCF after a dispute regarding canteen and "kicked [Plaintiff] in his groin area with his right foot." *Id*. at 10-11.  Meanwhile, Plaintiff alleges Gonzalez was negligent by staying in his office during the incident and by failing to "stop Kaufman or help [Plaintiff]" and "turning a blind eye to the situation [and] opening the cell door for Kaufman." *Id*. at 12.

Plaintiff further alleges that Defendant Philips violated the Eighth Amendment by acting with deliberate indifference to a serious medical condition when she examined him in the SCCF medical clinic on October 23, 2012, after the event. *Id*. at 18.  Philips examined Plaintiff's bruised thigh and groin area and "ordered Tylenol and ice for a week to reduce pain and swelling." *Id*.  Plaintiff claims he later had a subsequent visit with Philips and asserts that "[t]he failure ... to provide adequate case . . . follow-up care and treatment . . . and referral to a specialist, constitutes the tort of negligence under the law of Colorado." *Id*.  Plaintiff seeks declaratory judgment that Defendants violated his rights, injunctive relief ordering Philips to arrange for Plaintiff to be "evaluated by a medical practitioner with expertise in the treatment of testicular injuries," and compensatory and punitive damages totaling approximately $1,250,000. *Id*. at 23-24.

**II.    Procedural History**

After Judge Gallagher dismissed portions of Plaintiff's Amended Complaint, Plaintiff's surviving claim asserts Eighth Amendment violations against three remaining Defendants. *See* docket #11. Plaintiff then on May 5, 2015, and June 5, 2015, sought appointment of counsel by the Court [*see* dockets ##30, 37], which the Court denied without prejudice for being premature as no

response had been filed, so the Court could not determine the potential merit of Plaintiff's claims and defenses [dockets ##31, 43]. Defendants then on June 29, 2015, filed the pending Motion to Dismiss. Docket #46. Plaintiff requested and received an extension to respond. *See* dockets ##47, 48.

The Court held a Status Conference on July 30, 2015, at which Plaintiff appeared telephonically and said he was struggling to receive access to legal research materials from the law library at his correctional facility, CCF. *See* docket #49. The Court ordered defense counsel to inquire into the situation and provide a status report before August 6, 2015. *Id.* Defense counsel filed that report on August 12, 2015. *See* docket #53. Counsel explained Plaintiff's high level of security prevented him from having personal access to the law library, but noted the facility provides "an alternative procedure to ensure adequate access to legal materials for those offenders." Docket #52 at 2. The process required Plaintiff to "submit completed request forms to housing staff, or personally to the Facility Legal Assistant." *Id.* Special forms needed to be used, which were available "upon request in all units." *Id.* at 3. Offenders were allowed to make one request for no more than 10 items per week. *Id.* Materials could be used for 14 days, but no new materials would be provided until all older material had been returned. *Id.* As a result of the Status Report regarding access to legal research materials, the Court granted Plaintiff's requests for additional extensions by which to file his Response to the pending Motion. *See* dockets #54, 56. Plaintiff filed his Response on September 30, 2015. Docket #59. Defendants did not file a reply.

## LEGAL STANDARDS

### I. Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter

jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Id.* (citing *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013)). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Pueblo of Jemez*, 790 F.3d at 1151. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002-03 (citations omitted). The present motion launches a facial attack on this Court's subject matter jurisdiction; therefore, the Court will accept the truthfulness of the Amended

Complaint's factual allegations.

## II.     Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

### III. Dismissal of a *Pro Se* Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's pleadings "liberally" and hold the pleadings "to a less stringent standard than formal pleadings filed by lawyers." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). "[The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Id.* (citing *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997)). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Id.* (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall*, 935 F.2d at 1110; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) ("we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded") (quoting *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## ANALYSIS

"When a defendant seeks dismissal under Rule 12(b)(1) and 12(b)(6) in the alternative, the court must decide first the 12(b)(1) motion for the 12(b)(6) challenge [may] be moot if the court lacked subject matter jurisdiction." *Mounkes v. Conklin,* 922 F. Supp. 1501, 1506 (D. Kan. 1996) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990)).

### I. Sovereign Immunity

Plaintiff sues Defendants in both their official and individual capacities. Docket #11 at 3.

Defendants argue they are absolutely immune from liability for the official-capacity claims pursuant to the doctrine of sovereign immunity.

Claims against state officials in their official capacities are essentially claims against the state entity. *Ky. v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted). It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994). Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies. *Blatchford v. Native Village of Noatak & Circle Village*, 501 U.S. 775, 785-86 (1991). Thus, an official-capacity lawsuit is appropriate only where the claims could be sustained against the entity in its own name. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

The Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff is seeking prospective enforcement of their federal rights. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908). But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a means for seeking money damages. *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

Here, Plaintiff specifically seeks monetary damages from Defendants; to the extent he seeks such damages against Defendants in their official capacities, his claims are barred and the

Defendants' Motion will be granted as to any official-capacity claims.

## II.      Qualified Immunity

Defendants also assert they are entitled to qualified immunity on the Eighth Amendment claims against them in their individual capacities. Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "It is an entitlement not to stand trial or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). "The privilege is an immunity from suit rather than a mere defense to liability." *Id.*

Qualified immunity is designed to shield public officials and ensure "that erroneous suits do not even go to trial." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 779 (10th Cir. 1993) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow*, 457 U.S. at 806-08 (1982); *Pueblo Neighborhood Health Ctrs. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988)). Consequently, courts should address the qualified immunity defense at the earliest possible stage in litigation. *Medina v. Cram*, 252 F.3d 1124, 1127-28 (10th Cir. 2001); *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).

The Supreme Court has discarded a review process that required courts to examine these

questions sequentially, first considering whether a right had been violated, and then second – if the court concluded a right had been violated – whether that right was clearly established at the time of the alleged violation. *Pearson*, 555 U.S. at 232-35. *Pearson* instead affords courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009). Here, the Court will examine first whether Plaintiff has alleged sufficient facts supporting a plausible claim that these Defendants violated Plaintiff's constitutional rights. Defendants all argue that Plaintiff fails to state plausible constitutional claims against them because the statute of limitations ran before Plaintiff filed this suit. Docket #46 at 5-6.

While the statute of limitations is an affirmative defense, if it is clear from the complaint that the right to bring an action has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute. *Aldrich v. McCulloch Prop., Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir. 1980); *Escobar v. Reid*, 668 F. Supp. 2d 1260, 1287 (D. Colo. 2009) (noting that "once a defendant satisfies his initial burden to show that a claim is untimely, the burden shifts to [the plaintiff] to establish a later accrual date of the statute of limitations or to show that there is a basis to toll the accrual date."). Statute of limitations periods in Section 1983 suits are determined by reference to the personal injury statute of the state in which the federal district court sits. *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). "Federal law, however, determines the date on which the claim accrues and the limitations period starts to run." *Id.* In Colorado, the general statute of limitations for personal injury claims provides that such a claim must be brought within two years after the action accrues. *See* Colo. Rev. Stat. § 13-80-102 (1995). "A civil rights

action accrues when facts that would support a cause of action are or should be apparent." *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995) (internal quotations omitted).

Under Colorado law, equitable tolling is applied in two distinct situations: (1) when "defendant's wrongful conduct prevented the plaintiff from asserting the claims in a timely manner"; and (2) when "truly exceptional circumstances prevented the plaintiff from filing the claim despite diligent efforts." *Noel v. Hoover*, 12 P.3d 328, 330 (Colo. App. 2000); *see also Brodeur v. American Home Assur. Co.*, 169 P.3d 139, 149 (Colo. 2007) ("an equitable tolling of a statute of limitations is limited to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts.") (quoting *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1099 (Colo. 1996)). In practice, however, Colorado courts rarely allow equitable tolling. *Escobar*, 668 F. Supp. 2d at 1272.

Here, Plaintiff's Amended Complaint alleges he was involved in an incident with Defendant Kaufman on October 22, 2012, and the same day, Defendant Gonzalez failed to act. Docket #11 at 10-12. His allegation against Defendant Philips is for inadequate medical examination and insufficient treatment on October 23, 2012, when she told him to take Tylenol and use ice for one week. *Id.* at 18, 25-26. Plaintiff indicates Philips saw him one more time, on October 28, 2012, but the Amended Complaint does not indicate any subsequent examination took place after the one-week period. *See* docket 59 at 10. Plaintiff filed his Complaint on March 16, 2015, nearly five months beyond the two-year statute of limitations pursuant to Section 1983 and Colo. Rev. Stat. § 13-80-102.

Plaintiff appears to concede he filed his Complaint after the statute of limitations had run,

but asserts equitable tolling should apply. Docket #59 at 5-6. He notes many attempts to seek legal counsel "at around the beginning of 2013, a couple of months after the assault," through the Colorado Prison Law Project and the American Civil Liberties Union. *Id*. at 5. Neither decided to represent him, so he attempted on November 12, 2013, to file a complaint himself by mailing it to U.S. District Court in Denver, Colorado. *Id*. at 7. He received no response from the Court so followed up with two letters, one in February 2014 and another in June 2014. *Id*. He had his sister "call the courthouse in August 2014," and indicates she was told that the Court never received the complaint or letters, making him suspect that his mail was being intercepted at the jail. *Id*. Plaintiff says he waited so long to file any documents with the Court because he "received a number of direct threats from Sgt. Kaufman and Officer Gonzales coercing me to say nothing about being assaulted or pursuing a legal complaint any further." *Id*. He alleges that Kaufman "threatened to have [him] killed if [he] spoke up," putting him in "direct threat at [that facility] of repeated physical injury." *Id*. at 9. Therefore, Plaintiff did not file documents until after being transferred to a new facility on November 19, 2014. *Id*. Plaintiff notes that he has not been able to access the law library to adequately research his case and calls himself "computer illiterate." *Id*. at 8-9. He also alleges he is "not mentally competent" and suffers from "PTSD, latent schizophrenia, major clinical depression, a brain lesion in the amygdala region, and schizo-affective disorder with psychotic features." *Id*. at 7-9.

On these facts, the Court finds Plaintiff knew of the alleged constitutional violations at the time they occurred, in October 2012. Plaintiff sought to file suit within approximately one year of the events giving rise to his claims, seeking legal counsel and attempting to mail documents to the Court in what would have been within the statute of limitations. The Court is unpersuaded by

Plaintiff's other arguments as well, concluding Plaintiff has failed to establish a factual basis necessary for tolling. His assertion that he did not file documents because Defendant(s) threatened him and he feared physical injury are belied by the fact that he did in fact file documents with the Court – or attempt to. His argument that he is mentally incompetent is countered by his demonstrable competency in drafting, filing, citing legal authority, making legal argument, and filing documents in this case. His lack of access to legal research materials was addressed by the Court as described above and has not hindered Plaintiff as he has been given abundant time to file documents and thus to research. Even construing Plaintiff's argument liberally, the Court finds that Plaintiff fails to allege or explain how he was prevented from filing claims alleging violations of his constitutional rights against the Defendants in a timely manner.

Therefore, the Court finds Plaintiff's claims against the Defendants are barred by the statute of limitations, thus Defendants are entitled to qualified immunity. Consequently, the Court grants the Motion to Dismiss on that basis.

## III.     Leave to Amend

Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is "a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) (quoting *Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001)). As such, in this jurisdiction, a court typically does not dismiss a claim under Fed. R. Civ. P. 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations. *See Bellmon,* 935 F.2d at 1109-10. The Court may only dismiss "*sua sponte* when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [them] to amend [their] complaint would be

futile." *Id.* (quoting *McKinney v. Oklahoma,* 925 F.2d 363, 365 (10th Cir. 1991)). Here, the Plaintiff has already amended his pleading, having received guidance from the Court as to defective allegations.. The Court concludes Plaintiff may not cure the pleading deficiencies and will thus not allow the Plaintiff to file an additional amended complaint.

## **CONCLUSION**

Accordingly, based upon the foregoing and the entire record herein, the Court **grants** Defendants' Motion to Dismiss Plaintiff's Amended Complaint [filed June 29, 2015; docket #46].

Entered and dated at Denver, Colorado, this 18th day of November, 2015.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge